## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAMARIS MARIE BRANDT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-21-1202-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Damaris Marie Brandt ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 7, 8), and the parties have fully briefed the issues (Docs. 19, 21).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 16). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.   20 C.F.R.   § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."   *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History

Plaintiff filed an application for DIB on February 5, 2018, alleging a disability onset date of June 28, 2013.  (AR, at 135).  The SSA denied the application initially and on reconsideration.  (*Id*. at 134-57, 185-88, 190-95).  Then an administrative hearing was held on January 19, 2021.  (*Id*. at 78-133).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id*. at 56-71).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

4

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from December 6, 2017, the first potential onset date,[3] through her date last insured of December 31, 2018.  (AR, at 59).  At Step Two, the ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus; sleep apnea; obesity; arthritis; and, lupus." (*Id*.)  At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 61).  The ALJ then determined that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant was able to perform occasional overhead reaching with the non-dominant left upper extremity and was able frequently to handle, finger, and grip bilaterally, but never climb ladders, ropes, or scaffolds.

(*Id*. at 62).  Then, at Step Four, the ALJ concluded that, through the date last insured, Plaintiff "was capable of performing past relevant work as an administrative clerk and as a bookkeeper," and that "[t]his work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."  (*Id*. at 70).  Thus, the ALJ found that Plaintiff had not been under a disability from the first potential onset date of December 6, 2017, until the date last insured of December 31, 2018.  (*Id*. at 71).

## IV.    Claims Presented for Judicial Review

Plaintiff raises three issues on appeal.  First, Plaintiff claims that the ALJ's determination at Step Two failed because the ALJ did not properly consider the entire

---

[3] Although Plaintiff alleges an amended disability onset date of June 29, 2017, due to a previously denied application, her first potential date of eligibility is December 6, 2017. (Doc. 19, at 1) (citing AR, at 56).

record and all of Plaintiff's impairments.  (Doc. 19, at 3).  Specifically, Plaintiff alleges that the ALJ incorrectly determined Plaintiff's major depressive disorder and unspecified anxiety disorder to be non-severe and ignored Plaintiff's somatoform disorder.  (*Id*. at 4-6).  Second, Plaintiff claims that the ALJ erred in her analysis at Step Three by failing to find that Plaintiff meets or equals Listing 12.07 for somatic symptom and related disorders.  (*Id*. at 3, 6-8).  Finally, Plaintiff argues that the ALJ violated the *Winfrey* test by failing to account for all of Plaintiff's physical and mental limitations while questioning the vocational expert and forming the RFC, in part by failing to account for Plaintiff's mental limitations and failing to address Plaintiff's somatoform disorder.  (*Id*. at 3, 8-11).

In response, the Commissioner argues that the evidence does not support Plaintiff's contention that she had a somatoform disorder and that the ALJ did not err in assessing the RFC.  (Doc. 21, at 6, 13).

## V.  The ALJ Did Not Err in Determining the Severity of Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ erred in determining her mental impairments to be non-severe.  Her sole support for this argument is a summary of a psychological test administered to Plaintiff on April 3, 2018, at the VA Medical Center in which a psychologist stated:

> Today's MMPI2 was taken in a deliberate, consistent and accurate manner. The resulting profile was not within normal limits. Specifically, today's MMPI2 reflected moderately-severe depression and anxiety. The depression and anxiety were dominated by somatic concerns and physical complaints. Even given her multiple medical problems, the somatization suggested a strong psychological contribution. Bizarre and unusual experiences were endorsed, which she explained as her belief in ghosts and similar phenomena. No suicide items were endorsed on today's MMPI2. The

difference between the two profiles was the increased number of physical complaints on today's MMPI; however, the 2014 profile also included significant somatic concerns.

(Doc. 19, at 5 (quoting AR, at 402)).  This report listed Plaintiff's diagnoses as "major depressive disorder, anxiety disorder NES, [and] psychological factors associated with medical disorders."  (AR, at 455).  Plaintiff asserts that this evidence was "overlooked" or "ignored" by the ALJ's experts, and thus it was error for the ALJ to rely on the experts' opinions that Plaintiff's mental impairments were non-severe.  (Doc. 19, at 5-6).  Plaintiff complains that "[a]bsent from Step Two is any mention of a somatoform disorder, even though Dr. Blitz in her testimony uses the physical complaints as a way of disproving Claimant's psychological distress, instead of looking at a somatoform diagnosis."  (*Id*. at 6).[4]

As the Commissioner points out (*see* Doc. 21, at 6), no medical professional ever diagnosed Plaintiff with somatoform disorder, including the psychologist who summarized her MMPI2.  *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (noting that a statement that a plaintiff "'may be given to . . . somatic concerns' . . . does not suggest

---

[4] "Somatic symptom disorder is diagnosed when a person has a significant focus on physical symptoms, such as pain, weakness or shortness of breath, to a level that results in major distress and/or problems functioning. The individual has excessive thoughts, feelings and behaviors relating to the physical symptoms. The physical symptoms may or may not be associated with a diagnosed medical condition, but the person is experiencing symptoms and believes they are sick (that is, not faking the illness)."  Website, American Psychiatric Association, *What is Somatic Symptom Disorder*, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder  (last viewed March 27, 2023).  *See also* Website, WebMD, *Somatic Symptom and Related Disorders*, https://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment (last viewed March 27, 2023) (noting that somatic symptom disorder was "formerly known as 'somatization disorder' or 'somatoform disorder'").

plaintiff has a somatoform disorder as that condition is described in section 12.07"). Moreover, Plaintiff's statement that the record was overlooked or ignored by the mental medical experts or the ALJ is not correct.  The consultative examination by Joan Holloway, Ph.D., specifically referenced and summarized the "4/3/18 psych consult" and the diagnosis of "Major Depressive Disorder, Anxiety D/O."  (AR, at 138).  The subsequent consultative examination by Joy Kelley, Ph.D., made the same reference (*id*. at 152), and it was further noted that for Plaintiff's "history" the doctor consulted Plaintiff's VA Medical Center records including "health psychology consult dated 4/3/18" (*id*. at 153). Dr. Blitz, the medical expert who testified at Plaintiff's hearing, testified to her knowledge that Plaintiff had "received treatment for her mental health conditions from . . . the Veteran's Administration Medical Center," and she specifically referenced her review of Exhibit 2F, which contained that record Plaintiff raises.  (*Id*. at 90).

Finally, the ALJ stated that she made a "careful consideration of the entire record" (*id*. at 59, 62), and she specifically cited to the exact page of the psychological report that Plaintiff raises here (*id*. at 60, 65 (citing Exhibit B2F/28, which is the same page as AR, at 402)).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Plaintiff's contention that the April 3, 2018, psychological evaluation could have supported a finding that Plaintiff's depression or anxiety were severe or could have supported a diagnoses of somatic symptom disorder is merely a request to reweigh the evidence, which this court cannot do.  *Vigil*, 805 F.3d at 1201.  There was substantial evidence, thoroughly discussed by the ALJ (AR, at 60-61), to support the ALJ's

finding that Plaintiff's diagnosed mental impairments were non-severe, and thus there was

no error at Step Two.[5]

## VI. The ALJ Did Not Err at Step Three By Failing to Find that Plaintiff Does Not Meet or Equal Listing 12.07 for Somatic Symptom and Related Disorders.

Listing 12.07 provides:

12.07   Somatic symptom and related disorders (see 12.00B6), satisfied by A and B:

A.   Medical documentation of <u>one</u> or more of the following:

   1.   Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;

   2.   One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or

   3.   Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B   Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

   1.   Understand, remember, or apply information (see 12.00E1).

---

[5] Plaintiff also complains that the ALJ listed Plaintiff's sleep apnea as both a severe and non-severe impairment and failed to evaluate Plaintiff's cervical disc disease. (Doc. 19, at 4). However, Plaintiff does not further develop those arguments and therefore the court declines to entertain them. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner . . . are waived."); *Harper v. Astrue*, 2012 WL 2681292, at *7 (N.D. Okla. July 6, 2012), (finding that plaintiff's arguments were "perfunctory and undeveloped to the point that this Court cannot give them meaningful review, and therefore, pursuant to *Wall* [*v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)], a finding that these arguments have been waived is appropriate"), *aff'd sub nom. Harper v. Colvin*, 528 F. App'x 887 (10th Cir. 2013).

2.      Interact with others (see 12.00E2).

3.      Concentrate, persist, or maintain pace (see 12.00E3).

4.      Adapt or manage oneself (see 12.00E4).

Plaintiff argues that she meets or equals the requirements of Listing 12.07(A)(2) and (B) and that the ALJ erred by failing to consider Listing 12.07 and failing to make that finding. (Doc. 19, at 6-8).

"Plaintiff 'has the burden at step three of demonstrating, through medical evidence, that her impairments meet *all* of the specified medical criteria contained in a particular listing.'" *Stelting v. Kijakazi*, No. CIV-20-640-HE, 2021 WL 6841244, at *3 (W.D. Okla. Oct. 19, 2021) (quoting *Riddle v. Halter*, 10 Fed. App'x. 665, 667 (10th Cir. 2001) (emphasis in original)), *report and recommendation adopted*, 2022 WL 363354 (W.D. Okla. Feb. 7, 2022).  When viewed in light of the medical evidence argued by Plaintiff, Plaintiff's statements that she meets 12.07(A)(2) and that "it is apparent a somatoform disorder is present" are perplexing and, at best, conclusory. (*See* Doc. 19, at 7).  In addition, with regard to the 12.07(B) requirements, Plaintiff merely claims, without further explanation or evidence, that she has "a marked limitation in adapting or managing oneself, as well as interacting with others[s][,] concentration, persistence and pace." (*Id.*)  This is another improper request for this court to reweigh the evidence.

When evaluating the severity of Plaintiff's mental impairments at Step Two, the ALJ found that Plaintiff had no more than mild limitations in the Paragraph B criteria, which are identical to the requirements of Listing 12.07(B). (AR, at 60-61).  These findings were supported by substantial evidence, as the ALJ cited to medical evidence and the

findings were consistent with the findings of three medical opinions. (*Id.*; *id.* at 68, 90-97). These findings fully undermine Plaintiff's assertion that she meets Listing 12.07. *See Wilson v. Barnhart*, 82 F. App'x 204, 211 (10th Cir. 2003) ("[W]hile the ALJ did not specifically cite listing 12.07, the ALJ did evaluate plaintiff's mental status based on the subsection "B" criteria in listing 12.07, and he specifically found that plaintiff did not demonstrate the type of limitations with respect to her social functioning and daily living activities that are necessary to satisfy the listing. The ALJ's findings regarding the subsection "B" criteria are supported by substantial evidence in the record. We therefore conclude that the ALJ did not commit reversible error at step three of the evaluation process."); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). Accordingly, the ALJ did not err at Step Three.

**VII.   The ALJ's Omission of Mental Restrictions from the RFC Was Not Error.**

Plaintiff argues that the ALJ failed to account for Plaintiff's mental limitations and somatoform disorder while forming the RFC and questioning the vocational expert. (Doc. 19 at 3, 8-11). As discussed *supra*, the failure to include limitations related to somatoform symptom disorder was not error, as Plaintiff did not have a diagnosis nor could she meet her burden to provide medical evidence to establish she met the criteria of that disorder, and the ALJ's determination of her mental impairments was supported by substantial evidence.

Plaintiff asserts that because the ALJ found that Plaintiff had mild limitations in the broad functional areas of mental functioning, the ALJ was required to include some mental limitations in the RFC.  (*Id*. at 10).  That is not the law.  The ALJ is only required to make "a distinct mental RFC assessment" at Step Four, even after finding a mental impairment to be non-severe at Step Two.  *See Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013); *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013).  The ALJ did so.

After finding Plaintiff's depression and anxiety non-severe at Step Two, the ALJ recognized that a distinct mental RFC assessment was still required at Step Four, stating:

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the Administrative Law Judge has found in the "paragraph B" mental function analysis.

(AR, at 61).  At Step Four, the ALJ extensively summarized the medical records relating to Plaintiff's mental impairments and thoroughly evaluated the persuasiveness of the medical opinions rendered by three psychologists, including one who testified at the hearing.  (*Id*. at 64-65; 66, 68-69).  The ALJ found that the two medical opinions finding mild limitations in each of the four broad areas of mental functioning were "persuasive and [] given great weight as consistent with the objective medical evidence, serial mental status findings, treating medical records, function reports, and the overall longitudinal record through the date last insured."  (*Id*. at 68).  The ALJ concluded, "[a]ccordingly, the decision reflects no severe mental impairment."  (*Id*.)  The ALJ further observed that

Dr. Blitz testified the records establish no more than minimal impairment in the claimant's ability to perform work functions based solely on her mental health conditions. She testified the claimant's mental status examinations are within normal limits with normal attention, memory, and concentration, as well as insight, judgment, and behavior as all being unimpaired.

. . .

. . . Concerning the Paragraph B criteria, Dr. Blitz testified that she found no more than mild functional limitation in any domain area.

The findings and opinion of the impartial expert, Dr. Blitz, are persuasive and have been given substantial weight and consideration as consistent with the treating medical records, objective medical evidence, and overall longitudinal record through the date last insured. For these reasons, the decision reflects no severe mental impairment.

(*Id*. at 68-69). The ALJ's assessments of the mental health evidence in her evaluation of the RFC provide ample justification for her pointed omission of mental limitations in the RFC. Because there was no error in the formulation of the RFC and the ALJ questioned the VE consistently with the RFC, there was likewise no error.

The remainder of Plaintiff's contentions – that Plaintiff's psychological and physical complaints would cause mental effects that would impact her performance of her past relevant work – is yet another improper request to reweigh the evidence.

## VIII.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 30th day of March, 2023.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE